JUDGE ROBINSON

James J. Periconi
Delight D. Balducci
PERICONI, LLC
708 Third Avenue, 17th Floor
New York, New York 10017
(212) 213-5500
*Attorney for the Plaintiffs*



**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
CONCERNED CITIZENS OF CHAPPAQUA,
CHARLES NAPOLI, and GINA GORE,

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION (FEDERAL HIGHWAY
ADMINISTRATION) and NEW YORK STATE
DEPARTMENT OF TRANSPORTATION,

        Defendants.
------------------------------------------------------------X

CIVIL ACTION

DOCKET NO.: _____

**COMPLAINT**

Plaintiffs, by their undersigned counsel, allege as follows:

**NATURE OF THE ACTION**

1. This is an action for a Declaratory Judgment pursuant to 5 U.S.C. § 706, and 42 U.S.C. § 4321 *et seq.* to declare that in their approval of the Route 120 Bridge replacement project, the New York State Department of Transportation ("NYSDOT") and the Federal Highway Administration ("FHWA") have failed to comply with the requirements of (1) the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), as codified at 40 CFR Part 1500 *et seq.* and 23 CFR Part 771, (2) the National Historic Preservation Act, 16 U.SC. 470 *et seq.*, and (3) § 4(f) of the Department of Transportation Act, 49 U.S.C. § 303. Plaintiffs respectfully request this Court to annul as

arbitrary and capricious the agencies' decision to approve and fund the project, and remand this matter for the agencies' consideration of alternatives to bridge replacement – in particular, rehabilitation and repair – consistent with federal law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action, which arises under the laws of the United States, pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702. This Court also has jurisdiction to enter a Declaratory Judgment pursuant to 28 U.S.C. § 2201.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (d) because the property that is the subject of this action is located in this District.

## PARTIES

4. Plaintiff Concerned Citizens of Chappaqua ("Concerned Citizens") is a citizen-directed organization dedicated to enhancement and preservation of the small town feel of the hamlet of Chappaqua. Concerned Citizens opposes the demolition, replacement and widening (the "Project") of the historic Quaker Street Bridge (the Route 120 Bridge or the "Bridge"), which would be detrimental to the hamlet's unique way of life.

5. Plaintiff Charles Napoli is the chairman of Concerned Citizens, a member at the New Castle Landmark Advisory Committee and a professional architect, who has lived and worked in the hamlet of Chappaqua for more than 35 years, about one-half mile from the proposed Project and in the course of work and daily errands travels several times a day to and in the vicinity of the Bridge and the Project. From 1980 until 2002, his architectural practice office was immediately adjacent to the Bridge, overlooking it from the second story studies at 59 South Greeley Avenue.

6.  Plaintiff Gina Gore is the owner of Greeley Home & Hardware Co., a business located at 59 South Greeley Avenue in Chappaqua, immediately adjacent to the proposed Project. She and her business would be adversely impacted by the noise and other construction impacts during construction, by the loss of the historic Route 120 bridge, by the loss of upwards of 61 trees, many of which are magnificent specimen trees, oaks and sycamores, and by the likely permanent increase in traffic due to the increase from two to three lanes on the bridge.

7.  Defendant United States Department of Transportation ("USDOT") is a cabinet-level agency of the United States; the Federal Highway Administration, which approves and funds State highway projects, such as the Project, with federal monies, is a branch of the United States Department of Transportation.

8.  Defendant New York State Department of Transportation is a New York State agency charged with, generally, the construction and maintenance of New York's roadways, and was the applicant to defendant USDOT (FHWA) for approval and funding of the replacement for the Bridge that is the subject matter of this Complaint.

## FACTUAL BACKGROUND

a. **Pre-2007**

9.  This action concerns the Quaker Street Bridge (Route 120) in the Hamlet of Chappaqua, New York (the "Bridge"). Due to aging of the Bridge, instead of rehabilitating the bridge, NYSDOT seeks to demolish the Bridge entirely (the "Project). NYSDOT is receiving a grant from FHWA for the Project.

10. The Bridge is National Historic Register eligible.

3

11. The Historic American Engineering Record ("HAER") (Level II Documentation) of the Route 120 Bridge from the New York State Museum records explains the aspects of this bridge that make it historically special and unique in the course of an extensive report about the relationship of the Bridge to Chappaqua's history:

> Contributing elements consist of the intact stone abutments, wing walls, buttress walls, parapet walls, stairways, and corner columns, and steel railings.

12. By letter dated April 11, 2007, the Town Historian, who is also the Chairman of the New Castle Landmark Advisory Committee, in urging preservation of as many elements of the existing bridge, declared that "the railroad bridge is indeed of historic significance."

13. The Bridge is adjacent to two properties that are listed on the National Register of Historic Places ("NRHP") in Chappaqua, namely, Depot Plaza and the Chappaqua Train Station. The project to either rehabilitate or to replace the Bridge was a "major federal action" in that substantial federal funds were to be expended. NEPA 42 U.S.C. § 4332(c).

14. Both NRHP listed and NRHP eligible properties receive protection under Section 4(f) of the Federal Department of Transportation Act ("DOTA"), § 303.

15. On or about December 2, 2005, Defendant NYSDOT prepared the Section 106 Historic Preservation Act Finding Determination required for final approval of the Project.

16. That report concluded that in applying the criteria of Section 800.5(b) of 36 CFR Part 800, the replacement of the bridge "would have an *Adverse Effect*" on the historic bridge (emphasis in original) due to "current project objectives" formed in 2000.

4

17. On or about March 7, 2006, at a Town Board work session, NYSDOT agreed to widen the bridge on the south side during construction to three lanes of travel, rather than the then current design of two lanes of travel (one into and one out of the hamlet). The reason was to insure that two lanes (one in each direction) would always remain open during the construction phase.

18. On or about March 14, 2006, NYSDOT gave Town of New Castle (where the hamlet of Chappaqua is located) ("Town") three design options and sought the design decision from the Town as soon as possible.

19. In or about October 2006, NYSDOT prepared its Final Design Report, even though the Town had not made a final design decision.

20. The Final Design Report contained the legally mandated DOTA Section 4(f) Evaluation of the Bridge.

21. NYSDOT's report was presented at the Town Board meeting on or about October 3, 2006. At that meeting, the third lane was once again presented as necessary in order to maintain 2-way traffic during the construction phase.

22. The NYSDOT's Final Design Report dated October, 2006, classified the Project as a Categorical Exclusion under 23 CFR Part 771.117(d).

23. By letter dated November 1, 2006, the FHWA concurred with NYSDOT's assessment that "this bridge replacement project meets the conditions and criteria of a categorical exclusion since it will not induce significant impacts."

24. The Categorical Exclusion classification meant that no environmental assessment needed to be performed of the proposed Project.

25. At the time of the Section 106 finding in December 2005, the "small retaining wall," equivalent to the existing retaining wall, of 25 feet in length was planned for the Project.

26. At the time of the Final Design Report in October 2006, the retaining wall had expanded from 25 feet to approximately 146 feet. App. B – Alternative 3 (bridge replacement), Plan.

27. In fact, as only revealed in June 2007 for the first time, in the presentation documents used by defendant NYSDOT at a meeting of local Chappaqua merchants, the full length of the retaining wall was revealed to be far more than 146 feet.

28. Even though the October 2006 report was titled the "Final" Design Report, in fact, the design of the bridge was not final and would undergo substantial revisions within the following year, in or after June 2007.

29. The Section 106 report included NYSDOT's § 4(f) Evaluation, as required in 49 U.S.C.A. § 303(d).

30. Appendix F of the Final Design Report, entitled NEPA Checklist, contained the following question no. 23:

> Is the project listed in 23 CFR 771.117(d) (D-list) or is the project an action similar to those listed in 23 CFR S771.117(d)?

31. Question 23 was left unanswered.

32. Question 23 should have been answered "yes" because NYSDOT acknowledged in the body of the Final Design Report that the Project qualifies as a D-list project.

33. D-list projects require documentation

34. NYSDOT should therefore have submitted the required documentation, but it failed to do so.

35. On or about October 20, 2006, NYSDOT prepared a NEPA Assessment Checklist.

36. NYSDOT did not perform environmental studies that would have led to preparation of an Environmental Assessment, as required in 23 CFR 771.115(c) for Class III actions, i.e., those that do not fall within Class I or Class II Actions

37. On or about November 1, 2006, NYSDOT received design approval for the bridge from district Engineer Chris Gatchell of Defendant FHWA, based on the October 2006 Final Design Report, signifying that the environmental process has been signed off on.

38. On or about February 7, 2007, a New York State Historical Prevention Officer declared the bridge to be historically significant as an example of rigid steel frame span.

**b. Finalization of Construction Design in 2007:**

39. A change in the design of the Project was revealed at a Town open public meeting on or about June 12, 2007, where Defendant NYSDOT made a presentation.

40. At that meeting, for the first time, the full extent of the new retaining wall was revealed to be much more than 146 feet.

41. Project design and scope changed between the time of the October 2006 Final Design Report and the time that the design was finalized before going out to bid in October 2007.

42. In the October 2006 Final Design Report, the existing two lanes were to be replaced and an additional lane added as a "bump out" from the southern lane to accommodate two lanes of traffic during construction.

43. The "bump out" lane was intended to provide only a temporary solution during the construction phase.

44. At that meeting on or about June 12, 2007, the Town Administrator announced that NYSDOT had given the Town only 10 days from that date for approval of the greatly expanded design of the Project.

45. The Town only decided in its work session on or about June 19, 2007 (eight months after the § 4(f) evaluation in the October 2006 Final Design Report) that the "bump out" third lane would, extend as a right hand turning travel lane of traffic entering the hamlet.

46. The revisions to the design plan to accommodate the additional travel land going into the hamlet were not made until after the work session on or about June 19, 2007, which was well after the project had already undergone § 106 and § 4(f) reviews.

47. After finalizing the plan for the third lane in June 2007, the project had to be modified to provide for the extended travel lane to come into the hamlet.

48. These revisions include changing the length of the retaining wall and revising the alignment of the travel lanes from the Bridge to the hamlet.

49. The December 2005 Section 106 National Historic Preservation Act Finding Documentation notes that the length of the retaining wall needed to support the bump out lane would only be 25 feet extending east of the bridge.

50. Based on drawings that accompany the October 2006 Final Design Report, NYSDOT planned to extend the retaining wall further toward to the hamlet to 146 feet.

51. In June 2007, it was revealed that the actual length of the retaining wall would now extend approximately 264 feet.

52. With respect to alignment of travel lanes, according to the 2005 § 106 Report, the third lane would only require widening the bridge by 10 feet. The October 2007 final design, however, shows that the bridge widening would actually be 19.10 feet.

53. Vehicles crossing the bridge into town will no longer be allowed to make a sharp right turn into the parking lot off of South Greeley Avenue.

54. Instead, all vehicles wanting to access that area will have to continue southern on South Greeley Avenue, leading to increased traffic near the school crossing.

55. There are upwards of sixty-one trees (31 of them mature) within the expanded project corridor of the Bridge from Hunts Lane to the triangle intersection of the hamlet.

56. As part of the construction, NYSDOT calls for the removal of these sixty-one of the trees near the Bridge on both sides of the roadway.

57. Until the public meeting of June 24, 2008, no member of the public was aware of the significant impact that tree removal (due to the greatly expanded retaining wall) would have.

58. Among these trees are magnificent and irreplaceable oaks and sycamores, at least one dozen of which extend from 50 to 70 feet in height, and which are at least 75 years old.

59. These trees are an irreplaceable treasure of the hamlet, providing a wooded, bucolic gateway, continuing a historic farm to market style road, and provide an integral aspect of the charm of the hamlet.

60. Site clearance, including the destruction of these trees, is scheduled to begin at the "end of August" 2008.

### AND AS FOR THE FIRST CAUSE OF ACTION

### MISCLASSIFICATION OF THE ACTION (PROJECT APPROVAL) AS A CATEGORICAL EXCLUSION
### (NEPA, 42 U.S.C. § 4321 *et seq.*)

60. Plaintiffs incorporate by reference paragraphs 1 – 59 as if fully set forth herein.

61. NEPA requires that every "major federal action" significantly affecting the quality of the human environment (including those actions that have an impact on historical properties and resources) undergo an environmental review process before approval by a federal agency, in this case, the NYSDOT acting on behalf of DOT and the FHWA, and before expenditure of federal monies. 42 U.S.C. § 4321.

62. The DOT's Final Design Report issues in October 2006 incorrectly classified this action as a Class II (CE or "Categorical Exclusion") action and exempted the project from any environmental review.

63. However, the proposed project simply does not meet the definition of a CE under the FHWA regulations. 23 CFR Part 771.

64. Even if the proposed project met the definition of a CE, it would be exempted from such a classification under Part 771.117(b) because this project involves "significant impacts on properties protected by Sections 4(f) of DOT Act [49 USCA §

10

303 (2005)] and 106 of National Historic Preservation Act [16 USCA 470f (West 2005)]." 23 CFR § 771.117(b)(3).

65. The Defendants did not conduct an appropriate environmental study to determine if the CE classification is proper because the Bridge is an historic property subject to the requirements of sections 4(f) of the DOT Act and 106 of the National Historic Preservation Act, which would have overcome the exemption in 23 CFR 771.117(b).

66. The Project also does not qualify as a CE because it is not included on the list of actions that are set forth in Part 771.117(c) as Class II Categorical Exclusion (CE) activities. *See* 23 CFR § 771.117(c).

67. The Project cannot be considered a CE under 23 CFR Part 771.117(d) because it did not receive Administration approval for such as categorization upon submission by the applicant of "documentation which demonstrates that the specific conditions or criteria for these CEs are satisfied and that significant environmental effects will not result." 23 CFR § 771.117(d).

68. NYSDOT and FHWA acted arbitrarily and capriciously in treating the proposed Project as a Categorical Exclusion

69. Defendants' decision to approve the Project must be annulled as a matter of law.

**AS AND FOR THE SECOND CAUSE OF ACTION**

**LACK OF AN ENVIRONMENTAL ASSESSMENT
(NEPA, 42 U.S.C. § 4321)**

70. Plaintiffs incorporate by reference paragraphs 1 – 69 as if fully set forth herein.

71. The FHWA regulations state that an Environmental Assessment ("EA") is required when the proposed action is an "action in which the significance of the environmental impact is not clearly established." 23 CFR Part 771.117.

72. Since the proposed project did not clearly qualify as a CE, an EA was warranted.

73. Defendants' failure to perform environmental studies or to undertake an EA was arbitrary and capricious.

### AS AND FOR THE THIRD CAUSE OF ACTION

### FAILURE TO CHOOSE A "PRUDENT AND FEASIBLE" ALTERNATIVE (49 U.S.C.A. § 303)

74. Plaintiffs incorporate by reference paragraphs 1 – 73 as if fully set forth herein.

75. Pursuant to 49 U.S.C.A. § 303(c), the Secretary of Transportation may only approve a transportation project requiring the use of properties that are of national, State or local historic significance if (1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the historic site resulting form the use.

79. The administrative record lacks any demonstration that defendants determined that rehabilitating the existing bridge was either prohibitively costly or infeasible from an engineering perspective.

80. Rehabilitation, rather than replacement, of the historic bridge is a "prudent and feasible" alternative, in that the costs of or community disruption related to such rehabilitation would not "reach extraordinary magnitudes," nor is there anything in the record suggesting it is "infeasible" from the perspective of "sound engineering."

12

81. Even if there were no "prudential and feasible" alternatives of the proposed project, the approved plan for the destruction of the National Historic Register eligible bridge does not constitute a *de minimis* impact under 49 U.S.C.A § 303(d).

82. Defendants did not analyze all "prudent and feasible" alternatives at any time during its § 4(f) Evaluation and, therefore, acted arbitrarily and capriciously in approving the Bridge reconstruction project.

83. Defendants' approval of the Project must be annulled as a matter of law.

### AND AS FOR THE FOURTH CAUSE OF ACTION

### FAILURE TO SUPPLEMENT THE 4(f) EVALUATION
### (23 CFR Part 771.135)

84. Plaintiffs incorporate by reference paragraphs 1 – 83 as if fully set forth herein.

85. Significant changes were made to the design of the bridge reconstruction in June 2007.

86. 23 CFR Part 771.135(m) required the applicant, Defendant NYSDOT, to supplement its § 4(f) Evaluation after any significant changes to the Project.

87. NYSDOT failed to supplement its § 4(f) Evaluation after significant changes were made to the project in June 2007.

88. Defendant NYSDOT acted arbitrarily and capriciously in failing to supplement its § 4(f) Evaluation.

89. Defendant FHWA acted arbitrarily and capricious in approving the project without a supplemental § 4(f) Evaluation.

**WHEREAS,** Plaintiffs request judgment in the favor as follows:

    a.    Declaratory Judgment that Defendants' decision to approve the Project is null and void as made in violation of federal law;

    b.    an Order to stop commencement or continuation of any site clearance (i.e., tree felling) or construction activities or preparation of construction activities pending the Defendants' reevaluation of the Project under 42 U.S.C. § 4321 *et seq.*, the regulations promulgated in accordance therewith, and 49 U.S.C.A. § 303.

    c.    Attorney's fees and disbursements, including interest thereon; and

    d.    any other relief that this Court deems just and proper.

Respectfully submitted,

*[signature]*

James L. Periconi (JP-3184)
Delight D. Balducci (DB-6246)
PERICONI, LLC
Attorney for Plaintiffs
708 Third Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 213-5500