UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONCERNED CITIZENS OF CHAPPAQUA, CHARLES NAPOLI, and GINA GORE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION (FEDERAL HIGHWAY ADMINISTRATION) and NEW YORK STATE DEPARTMENT OF TRANSPORTATION,<br><br>Defendants. | 08 Civ. 7325 (SCR)<br><br>ORDER DENYING MOTION FOR RECONSIDERATION |

## I.     INTRODUCTION

Plaintiffs Concerned Citizens of Chappaqua, Charles Napoli, and Gina Gore (collectively, "the Citizens") seek to have this Court reconsider its Order, dated September 12, 2008 (the "TRO Order"), which denied the Citizens' motions for a temporary restraining order and a preliminary injunction. *See Concerned Citizens of Chappaqua v. United States Dep't of Transp.*, 579 F. Supp. 2d 427 (S.D.N.Y. 2008). The Citizens allege that this Court overlooked crucial matters and committed clear error (thus necessitating reconsideration) when it (1) admitted and considered the declaration of Kenneth Markunas, dated September 9, 2008, and (2) supposedly "overlooked" the Citizens' argument that the defendants had failed to reevaluate the construction project under Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303(c) ("Section 4(f)").

The factual background of this matter is detailed in the TRO Order. *See* 579 F. Supp. 2d at 429-31. For the reasons set forth below, the Citizens' motion for reconsideration is denied.

## II. ANALYSIS

### A. Standard for a Motion for Reconsideration

This District's Local Rule 6.3 requires a party seeking reconsideration to "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." S.D.N.Y. LOCAL CIV. R. 6.3. Such matters include "an argument the party has raised but the court has overlooked" that might reasonably be expected to alter the conclusion reached by the court. *Perez v. New York Presbyterian Hosp.*, No. 05 Civ. 5749, 2006 WL 988371, *1 (S.D.N.Y. Apr. 14, 2006); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The party seeking reconsideration bears the "heavy burden" to demonstrate "an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Glory Wealth Shipping Service Ltd. v. Five Ocean Corp. Ltd.*, 571 F. Supp. 2d 542, 544 (S.D.N.Y. 2008) (granting reconsideration on the basis of new settlement agreement evidence); *accord Flaherty v. Filardi*, No. 03 Civ. 2167, 2008 WL 4200577, *2 (S.D.N.Y. Sept. 12, 2008). A motion for reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Lit.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).

### B. Application of Law

#### 1. Admissibility of the Markunas Declaration

The Citizens claim that the Court improperly admitted and considered the declaration of Kenneth Markunas, the Historic Sites Restoration Coordinator of the New York State Historic Preservation Office. Ordinarily, a court may only consider evidence in the administrative record as it existed when the administrative decision was made. At oral argument on the preliminary injunction, the Citizens moved to strike the Markunas Declaration as extra-record evidence, and

the Court denied that motion in the TRO Order. 579 F. Supp. 2d at 436 n.9. The Citizens now seek to revisit that decision.

The Citizens' both misunderstand and overstate the manner and extent to which the Court relied on the Markunas Declaration in the TRO Order. The Court did not, as the Citizens claim, "heavily rel[y]" on the Markunas Declaration in ruling on the injunction. In fact, the Court had already concluded that "[t]he Citizens have failed to show that the features of the Train Station and Depot Plaza qualifying each as historic properties would be 'effected' by the visual impact of the expanded retaining wall." 579 F. Supp. 2d at 436. Only after reaching this dispositive conclusion did the Court note (prefaced with a "moreover" clause, no less) that it found "persuasive" the conclusions of Kenneth Markunas that the expanded retaining wall would have no additional adverse impact on the Route 120 Bridge, the Railroad Depot, or the Depot Plaza. *Id.*[1]

In any event, the Citizens' argument on the admissibility of the Markunas Declaration does not warrant reconsideration of the TRO Order. Under the standard articulated by this Court in the TRO Order (*see* 579 F. Supp. 2d at 436 n.9)—a standard acknowledged as correct by the Citizens—the Court properly exercised its discretion in accepting the Markunas Declaration as extra-record evidence "in order to determine the reasons for the agency's choice." *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997). Generally, a court reviewing an agency decision is confined "to the administrative record compiled by that agency when it made the decision." *Id.* (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). However, "[d]espite the general 'record rule,' an

---

[1] The Citizens also mischaracterize the Markunas Declaration as a *post hoc* rationalization for the agencies' actions. However, the defendants submitted the Markunas Declaration for the express purpose of rebutting the Citizens' accusation that the defendants "actively misled" the State Historic Preservation Office during the administrative process. *See* Pl.'s Reply Mem. in Supp. of Mot. for Prelim. Inj. (docket entry 12), pp. 1, 6, 12, 15; Hearing on Order to Show Cause (Sept. 10, 2008), Transcript pp. 5, 23.

extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Id.* Obviously, the administrative record cannot contain details about every action *not* taken, including details of a re-consultation with the State Historic Preservation Office that may not have been required. Therefore, it was appropriate in this case to consider "testimony on new matters when 'the agency's record [was necessarily] so sparse as to make judicial review ineffectual.'" *Preservation Coal. of Erie County v. Federal Transit Admin.*, 129 F. Supp. 2d 551, 562-63 (W.D.N.Y. 2000) (quoting *Sierra Club v. U.S. Army Corps of Engineers*, 772 F.2d 1043, 1052 (2d Cir. 1985)). Without any information in the administrative record explaining why a second consultation was not sought after the proposed expansion of the retaining wall to 298 feet, the Court appreciated the State Historic Preservation Office's perspective on whether a second consultation was necessary.

The Citizens fail to identify any applicable legal rule or material fact that the Court overlooked in ruling on the admissibility of the Markunas Declaration. "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion . . . the motion for reconsideration must be denied." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008). Disagreement with this Court's ruling is the basis for appeal, but not for reconsideration. *Faulkner v. National Geographic Soc'y*, 296 F. Supp. 2d 488, 490 (S.D.N.Y. 2003).

## 2. Requirement of Reevaluation Under Section 4(f)

At the preliminary injunction hearing, the Citizens failed to demonstrate a likelihood of success on their claim that the defendants shirked their obligations under Section 4(f) of the Department of Transportation Act. *See* 579 F. Supp. 2d at 436-438 ("[T]he Court finds sufficient evidence in the Administrative Record that the defendants adequately considered the relevant factors under Section 4(f), and that the agencies' evaluation of 'feasible and prudent alternatives' was reasonable."). On this motion for reconsideration, the Citizens contend that the Court "overlooked" the Amended Complaint's fourth cause of action—that the defendants failed to supplement the Section 4(f) analysis after changing to the project to include a 298-foot retaining wall. After reviewing the parties' submissions, the Court concludes that a reconsideration of the Citizens' Section 4(f) "supplementation" claim is not reasonably expected to alter the Court's previous disposition. *See Shrader*, 70 F.3d at 257. For the sake of precision, the Court offers the following clarification of the TRO Order.

Section 4(f) permits the Federal Highway Administration to "use" the "land of an historic site" only if there is no "prudent and feasible alternative to using that land" and the project "includes all possible planning to minimize harm" to the historic site resulting from the use. 49 U.S.C. § 303(c). Regulations promulgated under Section 4(f) state:

> Circulation of a separate section 4(f) evaluation will be required when: . . . a proposed modification of the alignment, design, or measures to minimize harm (after the original section 4(f) approval) would result in a substantial increase in the amount of section 4(f) land used, a substantial increase in the adverse impacts to section 4(f) land, or a substantial reduction in the mitigation measures.

23 C.F.R. § 771.135(m)(3) (2007).[2] The Citizens contend that the expansion of the retaining

---

[2] This regulation was revised in March 2008, and recodified at 23 C.F.R. Part 774. The regulation language quoted above was in effect at the time of the action and provides the applicable standard for resolution of this claim.

wall from 146 feet to 298 feet triggers all three conditions listed above: (1) a substantial increase in the amount of section 4(f) land used (the "increased use" condition), (2) a substantial increase in the adverse impacts to section 4(f) land (the "increased impact" condition), and (3) a substantial reduction in the mitigation measures (the "reduced mitigation" condition).

The Citizens fail to show how the TRO Order would change by reconsideration of this claim, which is foreclosed by applicable findings in the TRO Order. Notably, the Court found that the retaining wall will not increase the amount of Section 4(f) land used with respect to the bridge. The expanded retaining wall cannot significantly increase the "use" of an historic property that was already slated for complete removal.

Alternatively, the Citizens argue that the visual impacts of the retaining wall constitute "constructive use" of the adjacent train station and depot plaza. Pl.'s Mem. of Law in Supp. of Mot. for Reconsideration, p. 18 ("Under the regulations [sic] definition of constructive use, the modified design results in a substantial amount of section 4(f) land being used because the visual impact of the retaining wall adjacent to the Train Station and Depot Plaza is a use of that section 4(f) property where it was not 'used' before."). This argument is foreclosed by the Court's ruling under Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f. In reviewing Section 106, the Court found that the Citizens had not made a sufficient showing that the undesirable visual impact from the expanded retention wall constitutes an "unanticipated effect[] on historic properties" under 36 C.F.R. § 800.13(b)(1). Quoting the applicable regulations, the Court held that "[i]t is not clear at this time that the retaining wall's visual impact might adversely effect 'the features' or 'the characteristics of a historic property qualifying it' for historical protection." 579 F. Supp. 2d at 436.

Like the Court's analysis under Section 106, constructive use turns on the impact to "historic features" of Section 4(f) property:

> Constructive use occurs when the transportation project does not incorporate land from a section 4(f) resource, but the project's proximity impacts are so severe that the protected activities, *features, or attributes that qualify a resource for protection under section 4(f)* are substantially impaired. Substantial impairment occurs only when the protected activities, features, or attributes of the resource are substantially diminished.

23 C.F.R. § 771.135(p)(2) (2007) (emphasis added). *Compare* 36 C.F.R. § 800.5(a)(2)(v) ("Adverse effects on historic properties include * * * [i]ntroduction of visual, atmospheric or audible elements that diminish the integrity of the property's *significant historic features*.") (emphasis added); 36 C.F.R. § 800.16(i) ("Effect means alteration to the *characteristics of a historic property* qualifying it for inclusion in or eligibility for the National Register.") (emphasis added). Having already found that the Citizens "failed to show that the features of the Train Station and Depot Plaza qualifying each as historic properties would be 'effected' by the visual impact of the expanded retaining wall" (579 F. Supp. 2d at 436), the "increased use" and "increased impact" conditions are not triggered, and the defendants were not required to circulate a second Section 4(f) evaluation on these bases.[3]

Finally, the Citizens contend that "the new 298 foot long wall so overpowers the bridge that it compromises the mimicking of the architectural design details as required in the [Memorandum of Agreement] . . . and, therefore, results in a 'substantial reduction in measures to minimize harm,' requiring a supplementation of § 4(f) evaluation." Pl.'s Mem. of Law in

---

[3] On the underlying motion for a preliminary injunction, the Citizens acknowledge that the same considerations underpinning Section 106 are present in a Section 4(f) analysis. *See* Pl.'s Reply Mem. of Law in Supp. of Mot. for Prelim. Inj., p. 14 ("The [supplemental Section 4(f)] analysis is similar to the Section 106 analysis above. For the same reasons that the 2007 design changes posed an additional 'unanticipated effect on an historic resource', these changes also resulted in a 'substantial increase in the amount of section 4(f) land used', a 'substantial increase in the adverse impacts to section 4(f) land', and a 'substantial reduction in the measures to minimize harm.'").

Supp. of Mot. for Reconsideration, p. 18. Yet the Citizens misread the mitigation measures stipulated in the Memorandum of Agreement between the defendants and the State Historic Preservation Office. The Memorandum of Agreement sets forth only the following stipulated mitigation requirement:

> The existing bridge shall be recorded equivalent to HABS Level II documentation standards (plans if available large format negatives with 8" X 10" prints in report form). Two (2) copies of this documentation shall be prepared in report form and they shall be distributed as follows: one copy to the SHPO (to be forwarded to the State Archives) and one copy to a suitable local repository.

*See* Federal Administrative Record (FAR) 16:2-3. While the defendants note in a "whereas" clause their intention to mimic certain features of the historic bridge in the new design, this language is merely precatory. FAR 16:2. As quoted above, the only stipulated mitigation measure is to photograph, record, and document the existing bridge in a report delivered to the State Historic Preservation Office and the State Archives. As the expanded retention wall would not "substantially reduce" those particular mitigation measures, supplementation of the Section 4(f) analysis was not required.

### III.    CONCLUSION

Having failed to set forth the necessary facts to warrant reconsideration of the TRO Order, the Citizens' motion for reconsideration is denied.

*It is so ordered.*

Dated: White Plains, New York

January 13, 2009

Stephen C. Robinson, U.S.D.J.

-8-